2019 IL App (1st) 171832-U

No. 1-17-1832

Order filed December 27, 2019

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos.   14 CR 14348 |
| | ) |          14 CR 14350 |
| GERALD GADDY, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | William H. Hooks, |
| | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's convictions, concluding (1) the State presented sufficient evidence to sustain his convictions of criminal sexual assault; and (2) defendant did not receive ineffective assistance of counsel.

¶ 2    Following a bench trial, the trial court found defendant, Gerald Gaddy, guilty of 11 counts of criminal sexual assault based on his sexual penetration of M.M., and 4 counts of aggravated criminal sexual abuse and 1 count of aggravated battery based on his sexual touching of N.H. The court sentenced defendant to an aggregate prison term of 43 years. Defendant appeals, arguing (1)

the State failed to prove him guilty beyond a reasonable doubt of three of the charged offenses relating to his conduct with M.M., and (2) he was deprived of his right to effective assistance of counsel where his trial counsel failed to tender an alibi defense and disclose witnesses to support it and failed to properly prepare a witness for her testimony. We affirm.[1]

¶ 3     In case No. 14 CR 14348, the State charged defendant by indictment with 26 counts of criminal sexual assault and six counts of aggravated criminal sexual abuse based on various instances of sexual penetration he perpetrated on M.M. between April 10, 2014, and June 10, 2014. In case No. 14 CR 14349, the State charged defendant by indictment with one count of aggravated criminal sexual abuse based on his groping of A.K.'s buttocks.[2] (R. 91-92). In case No. 14 CR 14350, the State charged defendant by indictment with four counts of aggravated criminal sexual abuse and one count of aggravated battery based on his two separate gropings of N.H.'s breasts on June 18, 2014, and one groping of her buttocks between February 1, 2013, and June 18, 2014.

¶ 4     Thereafter, the State filed a motion to allow other crimes evidence (725 ILCS 5/115-7.3 (West 2014)), seeking to admit evidence of defendant's acts as charged in case Nos. 14 CR 14349 and 14 CR 14350 during the trial in case No. 14 CR 14348. Additionally, the State filed a motion for joinder (725 ILCS 5/114-7 (West 2014)), in which it sought an order joining case Nos. 14 CR 14348, 14 CR 14349, and 14 CR 14350 for trial. The court granted the State's motions.

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

[2] The charging instrument in case No. 14 CR 14349 is not included in the record on appeal, but we have gleaned the charge brought in that case from the report of proceedings. Defendant was found not guilty of the charge in case No. 14 CR 14349 (*infra*, ¶ 47).

¶ 5    The State proceeded to trial on 11 counts of criminal sexual assault in case No. 14 CR 14348 (as set forth in ¶ 6), the single count in case No. 14 CR 14349, and all 5 counts in case No. 14 CR 14350. The State nol-prossed the remaining counts.

¶ 6    Because the charges in the indictment in case No. 14 CR 14348 are relevant to defendant's contentions on appeal, we set forth those charges in detail before recounting the evidence presented at trial. Counts 3 and 4 of the indictment alleged defendant committed the offense of criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2014)) on or about April 10, 2014, in that he knowingly committed acts of sexual penetration upon M.M., who was between the ages of 13 and 18, at a time when he held a position of trust, authority, or supervision in relation to M.M., by making contact between his penis and M.M.'s "sex organ" (count 3) and mouth (count 4). Count 6 of the indictment alleged defendant committed the offense of criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2014)) on or about April 11, 2014, in that he knowingly committed an act of sexual penetration upon M.M., who was between the ages of 13 and 18, at a time when he held a position of trust, authority, or supervision in relation to M.M., by making contact between his penis and M.M.'s "sex organ." Count 8 alleged defendant committed the offense of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2014)) on or about April 12, 2014, and continuing on through June 9, 2014, in that he knowingly committed an act of sexual penetration by the use of force or threat of force, by making contact between his penis and M.M.'s anus. Counts 14, 15, 16, 17, 18, 19, and 20 alleged defendant committed the offense of criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2014)) on or about April 12, 2014, and continuing through June 9, 2014, in that he knowingly committed acts of sexual penetration upon M.M., who was between the ages of 13 and 18, at a time when he held a position of trust, authority, or supervision in relation to M.M.,

by (1) making contact between his penis and M.M.'s "sex organ" (count 14), (2) making contact between his penis and M.M.'s anus (count 15), (3) making contact between his penis and M.M.'s mouth (count 16), (4) making contact between his mouth and M.M.'s "sex organ" (count 17), (5) making contact between his mouth and M.M.'s anus (count 18), (6) inserting his finger into M.M.'s "sex organ" (count 19), and (7) inserting his finger into M.M.'s anus (count 20).

¶ 7 Though the State did not proceed to trial on count 26, defendant relies on that charge in support of his argument on appeal and, therefore, we summarize it here. Count 26 alleged defendant committed the offense of criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2014)) on or about June 10, 2014, in that he knowingly committed acts of sexual penetration upon M.M., who was between the ages of 13 and 18, at a time when he held a position of trust, authority, or supervision in relation to M.M., by making contact between his mouth and M.M.'s "sex organ."

¶ 8 The following evidence was presented at defendant's bench trial. M.M. testified that she was born on April 16, 1997. M.M. attended Simeon Career Academy (Simeon) during her freshman, sophomore, and junior years of high school and ran on the track and cross country teams. During her sophomore and junior years, defendant was one of her track and field coaches. When defendant became her coach, he introduced himself as "Coach Baby Face." During her junior year, M.M. and defendant's relationship transitioned from "normal" to "inappropriate" and "flirtatious."

¶ 9 On April 9, 2014, while on a bus on the way to a track meet, M.M. gave defendant a belated birthday card, in which she wrote she "was lucky to have him as a coach," she "was glad that he began to coach girls['] track," and she "loved him." At the time, M.M. was 16 years old. Defendant asked M.M. "in what way did [she] love him" and to explain herself in more depth. M.M. was not able to do so at that time. On the way home from the track meet, M.M. sat next to defendant and

told him she "was attracted to him and [she] liked him. And when [she] said [she] loved him, [she] meant it in more of a general way as opposed to a romantic way." Defendant told M.M. he wanted to kiss her, but M.M. told defendant she thought it was best to wait until she "was of age." When they arrived back at school, defendant asked M.M. to accompany him to his office, but she declined to do so.

¶ 10     On April 10, 2014, M.M. arrived to track practice at 3:30 p.m., and defendant asked her to accompany him to the wrestling office, which M.M. did not know existed and was isolated from other offices and classrooms. M.M. and defendant entered the office, where no one else was present, and defendant asked M.M. if she "had time to think about [their] conversation from the day before." Before M.M. could answer him, defendant started kissing her. Defendant then bent M.M. over his desk, pulled down her shorts, and placed his penis in her vagina, which caused M.M. pain. M.M. told defendant she was in pain and "asked him if [they] could do something else." Defendant did not stop right away and instead told M.M. "he liked to see [her] struggle." M.M. asked defendant a couple more times to stop and, when he did, she performed "oral sex" on him. While M.M. performed "oral sex" on defendant, he grabbed the back of her head and shoved his penis further into her mouth.

¶ 11     After school but before track practice on April 11, 2014, M.M. accompanied defendant to the wrestling office, where they had vaginal and oral sex.

¶ 12     M.M. testified that between April 10, 2014, and June 10, 2014, she and defendant had a continuing sexual relationship, during which they engaged in sexual activity approximately 40 times. All their sexual encounters took place in the wrestling office. Over that two-month period, defendant placed his mouth on M.M.'s breast, vagina, and anus. When asked whether defendant

"ever put his fingers anywhere inside [her] body" during that two-month period, M.M. responded, "yes *** in my vagina and in my anus." M.M. and defendant engaged in sexual activity every day that school was in session and, while some of the contact occurred during school hours, most of it occurred after school ended but before track practice started.

¶ 13    M.M. testified that she agreed to participate in the sexual acts on every occasion except June 6, 2014. The State asked M.M. what occurred that day, and the following colloquy occurred:

"Q. Can you please tell us what happened first when you were in the [wrestling] office?

A. It normally started with oral sex with him performing oral sex on me. And then afterwards, he – he – we just had vaginal sex. And the whole time I was laying on my back and he was standing up. And after he – after we had vaginal sex, it didn't last very long because he wanted to have anal sex.

And when he put his penis in my anus, it was really painful so I asked him to stop. And I asked him to stop but he told me no. And he began to take my hips and slide them towards him so he could enter me further. And I had tried to push him off of me but he took one of his hands and he just pretty much like clasped my two hands together and put them on my chest and he told me to stop fighting so I tried to kick him off of me but I couldn't. So I just gave up and stopped fighting."

During this encounter, M.M. did not consent to anal sex and asked defendant to stop "at least three or five times." As a result of this encounter, M.M. missed her last two classes that day.

¶ 14    On June 10, 2014, M.M. and defendant again engaged in sexual intercourse in the wrestling office. M.M. agreed to this encounter. When asked what sexual acts she and defendant engaged in that day, M.M. responded, "[a]nal sex, oral sex, vaginal sex[,] and digital."

¶ 15    M.M. testified that June 10, 2014, was the last day she and defendant had sexual contact. She decided to end the relationship because she "didn't feel like there was any remorse on [defendant's] part" and she thought it was odd "because normally when people do something bad or wrong or illegal, there is some type of guilt or remorse and there was none."

¶ 16    About a week prior to ending their relationship, M.M. confided in her friend, Jada Smith, that she was having a sexual relationship with an older man but did not tell Smith who it was. M.M. also told two other friends about her relationship.[3]

¶ 17    At the end of June 2014, M.M. received a phone call from the principal at Simeon, Dr. Sheldon House, and he asked her whether anything had happened between her and defendant. M.M. told Dr. House nothing had happened because he would have to tell the police and her parents, and she did not want Dr. House's opinion of her to be negatively affected. However, M.M. then spoke with her mother and reported what had been going on between her and defendant to both the police and the school.

¶ 18    M.M. denied being present during a meeting on July 20, 2014, at which Makayla Ross, A.K., Princess, Lashell Benton, Ashlei, Danyell, and Brianna Duckworth were present and discussed "how to proceed and how to make your stories sound good."[4]

---

[3] It is not clear from the record whether M.M. told these two other friends the relationship was with defendant.

[4] The last names of Princess, Ashlei, and Danyell are not identified in the record.

¶ 19    Ms. Smith testified that she graduated from Simeon in 2015. She was on the track team for three years, and defendant was one of her coaches. In 2014, Ms. Smith and M.M. were best friends. In May 2014, their relationship changed when M.M. told Ms. Smith she was sleeping with an older man. Ms. Smith became upset when M.M. shared this with her and sought guidance from defendant. Defendant asked Ms. Smith, "You think this got something to do with me[?]" Ms. Smith told defendant she did not want to talk to M.M. anymore, and defendant told her to support M.M.

¶ 20    Ms. Smith testified she and M.M shared the same school schedule from third through eighth periods in 2014. From April through June 2014, she noticed M.M. "was missing fifth and sixth period[s] a lot" but would return to classes for seventh and eighth periods.

¶ 21    N.H. testified that she was born on May 28, 1998. N.H. attended Simeon and ran cross country and track her freshman, sophomore, and junior years. Defendant was one of her coaches.

¶ 22    N.H. testified that, between February 2013 and June 2014, defendant touched her inappropriately "too many [times] to count." N.H. explained defendant hugged her with his hands wrapped around her waist and "his hands would go down and it would either tap my butt or squeeze my butt."

¶ 23    On April 4 or 5, 2014, the Simeon track team participated in a track meet in East St. Louis, Illinois. After N.H. finished her race, she told defendant one of her calf muscles was hurting. Defendant told her to lie down and that he would massage her muscles. N.H. lay face down in the infield of the track and defendant knelt beside her. Defendant massaged N.H.'s calf muscles and then "worked his way up to [her] thighs and *** went up to [her] upper thighs." Defendant rubbed the inside of N.H.'s thighs and then told N.H. to open her legs more. N.H. told defendant she was "good" and limped away.

¶ 24    At track practice on June 17 or 18, 2014, N.H.'s teammates tried to help her put on a weighted vest, which was difficult to buckle. Defendant told N.H.'s teammates to leave and that he would help N.H. put on the weighted vest. While defendant was buckling the vest, he squeezed N.H.'s breasts. N.H. told defendant to "stop playing" with her, and defendant replied, "I always find a way to make you smile." Defendant then squeezed N.H.'s breasts again.

¶ 25    A.K. testified that she was born on August 13, 1998. A.K. attended Simeon and, as a freshman in 2014, she ran on the track team. Defendant was one of her coaches. In spring 2014, during a track meet at St. Rita High School, defendant asked A.K. whether she wanted to "go places with him," such as downtown and the Taste of Chicago. Defendant also made an inappropriate comment about her body. On another occasion, defendant offered to buy A.K. clothes.

¶ 26    In June 2014, A.K. was in the head track coach's office with Symone Harris and defendant. While in the office, A.K. accidentally elbowed Ms. Harris in the face. A.K. tried to make sure Ms. Harris was "okay," hugged her, and rubbed her head. Defendant grabbed A.K.'s buttocks with his hand.

¶ 27    Ms. Harris testified that in 2014, she was a freshman at Simeon and ran on the track team. After A.K. bumped her with her elbow in the head track coach's office, A.K. hugged her and asked if she was "okay." When she looked up, defendant was standing behind A.K., leaving no space between his and her bodies. A.K. whispered in Ms. Harris's ear that defendant had touched her buttocks and they had to leave the office.

¶ 28    Ms. Ross testified she attended Simeon and ran on the track team. On April 26, 2014, when Ms. Ross was a freshman, defendant told her at a track meet that she "need[ed] to get [her] body

right for track and if he ever saw [her] on the streets that he [would] f*** [her]." Ms. Ross denied meeting with A.K., Princess, Benton, Ashlei, Danyell, Marianna, and Ms. Duckworth in July 2014.[5] Ms. Ross denied ever saying she "wanted to get" defendant and she denied ever saying to anybody that, if she and others "got together on [their] stories," they would have to be believed.

¶ 29    Ms. Ross testified that she told defendant's stepdaughter, Whitney Ward, over the internet that she wanted to fight her. According to Ms. Ross, she wanted to fight Ms. Ward because Ms. Ward had previously said defendant had touched her chest and buttocks, but Ms. Ward changed her story "[w]hen everything came out."

¶ 30    Dr. House testified that he was the principal of Simeon. On June 26, 2014, Dr. House met with N.H., who informed him defendant had made comments about her body, touched her breasts, and touched her butt. N.H. told Dr. House "it was happening to other people."

¶ 31    Later that day, Dr. House met with A.K. and learned of additional allegations. M.M. was not present that day, but Dr. House called her when he learned she was a part of what had occurred. Dr. House questioned M.M. regarding allegations that had been made against a track coach, and M.M. denied having knowledge of any inappropriate conduct between any of the coaches and athletes.

¶ 32    On June 27, 2014, Dr. House met with M.M., her parents, and an assistant principal. During the meeting, M.M. shared the details of her relationship with defendant.

¶ 33    The State introduced a certified copy of defendant's birth certificate, which indicated he was born on April 8, 1972.

_____

[5] Marianna's last name is not identified in the record.

¶ 34    The State rested, and defendant moved for a directed finding. The trial court denied the motion.

¶ 35    Ms. Duckworth testified she ran track while she attended Simeon, and defendant was one of her coaches. In July 2014, Ms. Duckworth was at a meeting in the driver's education classroom with girls from the track team, including Ms. Ross, A.K., Princess, Benton, Ashlei, Danyell, and Marianna, who had "decided they wanted to continue on with the conversation of what so-called went on." During the meeting, Ms. Ross said she wanted to get back at Ms. Ward and the girls should come up with something to get defendant fired. According to Ms. Duckworth, Ms. Ross and A.K. wanted to fight Ms. Ward, and A.K. disliked Ms. Ward. That same day, Dr. House began calling girls into his office to discuss allegations which had been made against defendant.

¶ 36    During the defense's case, the State objected to the defense calling a particular individual who was listed as a witness in defendant's answer to discovery, on the basis that the witness was not an occurrence witness or eyewitness.[6] According to the State, "[b]ased on what [the witness] told our investigators, the State [did] not understand what she could possibly [testify] to." The trial court asked defense counsel for a proffer regarding the proposed witness's testimony, and the following colloquy occurred:

> "[Defense counsel]: She is going to testify that during the Spring of 2014, [defendant] picked up her daughters both in the morning and drove them home every day and that he would pick them up at Carnegie at 3:30 to 3:45 and that he would pick them up at school and that, in fact, he did this every day. It shows that he wasn't having sex with –
>
> THE COURT: During what time period?

_____

[6] The witness was not identified on the record.

[Defense counsel]: Spring 2014.

THE COURT: Go ahead. Finish you answer.

[Defense counsel]: That's basically it.

THE COURT: You were getting ready to say it shows what?

[Defense counsel]: To show that this man was not in school having inappropriate conduct with students."

¶ 37    The State responded that it appeared the proposed witness was being called to offer an alibi defense and that such a defense was not tendered in defendant's answer to discovery. Additionally, the State argued that the proposed witness's children, not the woman, would be the proper witnesses to offer such a defense. The court agreed with the State, finding it would be improper to elicit the proffered testimony through the proposed witness and not her children, and ruled the proposed witness would not be allowed to testify. The court told defense counsel he could call the proposed witness's children. Counsel responded he could not call the children because he had not disclosed them in discovery. Defendant then called his next witness.

¶ 38    Ms. Ward testified that she was defendant's stepdaughter. In summer 2014, she had a summer job at Simeon, as did Ms. Ross, M.M., Ms. Smith, Marianna, Deondre Ms. Ward, Ms. Duckworth, N.H., and Danyell. During that summer, Ms. Ross, Ashlei, Marianna, and N.H. threatened Ms. Ward through text messages. Defense counsel asked Ms. Ward what was contained in the threatening text messages, and the following colloquy occurred:

"[Assistant state's attorney]: Objection.

THE COURT: What is the objection?

[Assistant state's attorney]: It is hearsay, and there is no foundation.

THE COURT: Sustained.

[Defense counsel]: Judge, it shows the character and nature of the high school girls who have testified, that they would threaten an innocent person.

THE COURT: Do we have the texts?

[Defense counsel]: No.

By [defense counsel]:

Q. Do you have those texts?

A. I have one of them.

Q. With you today?

A. In my phone.

Q. Where is your phone?

A. In the car.

[Assistant state's attorney]: Objection again.

THE COURT: Sustained.

[Assistant state's attorney]: The State has not been tendered that discovery.

THE COURT: That's a problem."

¶ 39    Counsel moved on and then returned to the threats Ms. Ward had received from the girls. Over the State's objection, Ms. Ward testified Ms. Ross threatened her by stating, "we were doing this to get back at you. Hah, hah, hah. How's your stepdaddy doing?" Counsel asked if this threat was made in a text message, and the State objected. When Ms. Ward answered the threat was made in a text, the court sustained the State's objection because defense counsel had not disclosed the

text messages to the State. Defense counsel then requested a continuance so Ms. Ward could bring her phone into the courtroom.

¶ 40     The trial court excused Ms. Ward so it could entertain a proffer from defense counsel as to the text message that Ms. Ward had retained in her phone. Counsel told the court the text message said, "[W]e are glad that your stepfather is in a better place in jail." Counsel also stated Ms. Ward had told him about the text message but he had not seen it. The court sustained the State's objection and denied defense counsel's request for a continuance.

¶ 41     David Burchett testified that he coached football and wrestling at Simeon. Mr. Burchett testified the wrestling office was small and "very, very hot" as a result of its lack of ventilation. Only Mr. Burchett, defendant, and an engineer had a key to the office.

¶ 42     In spring 2014, Mr. Burchett would go into his office five or six times per day. Mr. Burchett never saw students in the office, and he never found defendant with a female in the office. A security guard was designated for that area of the building because students would go to that area when skipping class.

¶ 43     Okila Ramsey testified that defendant was her fiancé. In spring 2014, she worked for the University of Chicago and at Simeon as an assistant track coach.

¶ 44     At a track meet on April 26, 2014, N.H. had a cramp and had to be carried to the infield. N.H. lay on her stomach, and defendant massaged her legs to relieve the cramping, which was a common occurrence. Ms. Ramsey, who was standing right there, did not observe defendant make any inappropriate contact to N.H.'s upper thighs.

¶ 45    Ms. Ramsey had observed defendant help female athletes with the weighted vest and never saw him make inappropriate contact with the athletes. Ms. Ramsey was also present when A.K. elbowed Ms. Harris in the eye, and she did not observe defendant grab A.K.'s breasts or buttocks.

¶ 46    Ms. Ramsey also testified that, between April and June or July of 2014, defendant left Simeon every day at 3:15 or 3:30 to pick her up at the University of Chicago. Defendant would first pick up two children from a grammar school, then pick up Ms. Ramsey, and then they would return to Simeon.

¶ 47    Defendant elected not to testify. The trial court found him guilty of 11 counts of criminal sexual abuse in case No. 14 CR 14348 (conduct involving M.M.), not guilty of aggravated criminal sexual abuse in case No. 14 CR 14349 (conduct involving A.K.), and guilty of 4 counts of aggravated criminal sexual abuse and 1 count of aggravated battery in case No. 14 CR 14350 (conduct involving N.H.). Defendant filed a posttrial motion. The court denied the motion.

¶ 48    The matter proceeded to sentencing. With respect to case No. 14 CR 14348, the trial court merged two counts of criminal sexual abuse and sentenced defendant to consecutive four-year prison terms on the remaining counts. With respect to case No. 14 CR 14350, the court sentenced defendant to three years' imprisonment on each count of aggravated criminal sexual abuse and two years' imprisonment on the aggravated battery count, with those sentences to run concurrently. The court noted the sentence in case No. 14 CR 14350 would run consecutively to the sentences imposed in case No. 14 CR 14348. In total, the court sentenced defendant to 43 years' imprisonment.

¶ 49    Defendant filed a motion to reconsider sentence, which the trial court denied. This appeal followed.

¶ 50    On appeal, defendant first contends the State failed to prove him guilty beyond a reasonable doubt of criminal sexual assault as alleged in counts 16, 19, and 20 of the indictment in case No. 14 CR 14348. Specifically, defendant argues the State failed to elicit any evidence (1) there was sexual contact between his penis and M.M.'s mouth between April 12, 2014, and June 9, 2014 (count 16); (2) defendant penetrated M.M.'s vagina with his finger between April 12, 2014, and June 9, 2014 (count 19); and (3) defendant penetrated M.M.'s anus with his finger between April 12, 2014, and June 9, 2014 (count 20).

¶ 51    When a defendant presents a challenge to the sufficiency of the State's evidence, "a reviewing court must determine whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted; emphasis in original.) *People v. Ross*, 229 Ill. 2d 255, 272 (2008). The reviewing court does not retry the defendant, and "the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *Id.* The mere fact that the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee reasonableness of the decision. *Id.* "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 52    As charged here, a person commits the offense of criminal sexual assault when he or she "commits an act of sexual penetration and *** is 17 years of age or over and holds a position of trust, authority, or supervision in relation to the victim and the victim is at least 13 years of age but under 18 years of age." 720 ILCS 5/11-1.20(a)(4) (West 2014). The Criminal Code of 2012 defines

"sexual penetration" as "any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any part of the body of one person *** into the sex organ or anus of another person." 720 ILCS 5/11-0.1 (West 2014).

¶ 53    The supreme court has recognized "it is often difficult in the prosecution of child sexual abuse cases to pin down the times, dates, and places of sexual assaults, particularly when the defendant has engaged in a number of acts over a prolonged period of time." *People v. Bishop*, 218 Ill. 2d 232, 247 (2006). Thus, the victim need only describe (1) the kind of acts committed with sufficient specificity to assure that unlawful conduct has occurred and to differentiate between the various types of proscribed conduct; (2) the number of acts committed with sufficient certainty to support each of the counts alleged in the information or indictment; and (3) the general time period in which the acts occurred to assure the acts were committed within the applicable limitation period. *People v. Letcher*, 386 Ill. App. 3d 327, 334 (2008) (citing *People v. Jones*, 51 Cal. 3d 294, 314-16, 792 P.3d 643, 654-56 (1990)). " 'Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or sustainability of the victim's testimony, but are not essential to sustain a conviction.' " *Id.* (quoting *Jones*, 51 Cal. 3d at 316, 792 P.2d at 656).

¶ 54    Before analyzing whether the State presented sufficient evidence to support the findings of guilt on counts 16, 19, and 20, we note defendant does not challenge that M.M. was between the ages of 13 and 18 or that he was 17 years of age or older and held a position of trust, authority, or supervision over M.M. by virtue of his position as her track coach. Thus, the issue we must resolve

with respect to each conviction is whether the State presented sufficient evidence to sustain the findings of sexual penetration on each of the challenged convictions.

¶ 55    Count 16 of the indictment alleged defendant committed the offense of criminal sexual assault based on contact between his penis and M.M.'s mouth "on or about April 12, 2014[,] and continuing on through June 09, 2014." Defendant argues the State failed to prove this offense beyond a reasonable doubt where M.M. did not testify there was any contact between defendant's penis and M.M.'s mouth during that time period. According to defendant, the State was required to prove the penis-to-mouth contact occurred between April 12, 2014, and June 9, 2014, because that is what the State alleged to have happened in the indictment. Defendant posits the only specific oral contact M.M. testified to during the relevant time period was that defendant placed his mouth on her vagina, breasts, and anus.

¶ 56    The State responds it presented sufficient evidence from which a rational trier of fact could conclude there was contact between defendant's penis and M.M.'s mouth between April 12, 2014, and June 9, 2014, based on M.M.'s testimony that she and defendant had "oral sex" on June 10, 2014. According to the State, the fact the sexual contact occurred one day outside the time period alleged in the indictment is of no consequence where there is no evidence defendant was prejudiced as a result of the variance between the charging instrument and the proof at trial. We agree with the State that the evidence was sufficient to sustain the trial court's finding of guilt on count 16.

¶ 57    Here, the record establishes defendant made contact between his penis and M.M.'s mouth on April 10, 2014, an act M.M. defined as "oral sex." M.M. testified that, on April 11, 2014, she and defendant had "sex, vaginal and oral." M.M. also testified that, over the two-month period between April 10, 2014, and June 10, 2014, she and defendant had a continuing sexual relationship,

during which defendant (1) performed oral sex on her by placing his mouth on her vagina, (2) digitally penetrated her by putting his finger inside her vagina and anus, and (3) placed his mouth on her breasts and anus. M.M. also testified that, on June 6, 2014, she and defendant had oral sex, which she described as defendant performing oral sex on her, and vaginal sex, and then they had anal sex against her will. M.M. described her final encounter with defendant, which occurred on June 10, 2014, more generally, stating she and defendant had "[a]nal sex, oral sex, vaginal sex, and digital." Because M.M. had previously explained the general term "oral sex" as contact between defendant's penis and her mouth, a rational trier of fact, viewing M.M.'s testimony in the light most favorable to the State, could conclude beyond a reasonable doubt that defendant committed an act of sexual penetration by making contact between his penis and M.M.'s mouth "on or about April 12, 2014, and June 09, 2014" based on M.M.'s testimony she and defendant had "oral sex" on June 10, 2014.

¶ 58    In reaching this conclusion, we reject defendant's argument that the State was required to prove the penis-to-mouth contact occurred between the dates specifically alleged in the indictment. We note defendant has forfeited this argument by failing to cite any authority to support it. See *People v. Pickens*, 354 Ill. App. 3d 904, 916 (2004) (contentions supported by some argument but no authority do not meet the requirements of Illinois Supreme Court Rule 341 and are forfeited). In any event, "[t]he date alleged in a charging instrument need not ordinarily be proved precisely. If there is an error in the indictment, and upon trial the proof establishes that the offense was committed on a date other than the precise date alleged, that irregularity will not constitute a fatal variance." *People v. Alexander*, 93 Ill. 2d 73, 77 (1982). "To vitiate a trial, a variance between allegations in a [charging instrument] and proof at trial ' "must be material and be of such character

as may mislead the accused in making his defense." ' " *People v. Collins*, 214 Ill. 2d 206, 219 (2005) (quoting *People v. Davis*, 82 Ill. 2d 534, 539 (1980) (quoting *People v. Figgers*, 23 Ill. 2d 516, 518 (1962))). Such a variance may also vitiate the trial when the statute of limitations is implicated by the variance. *Letcher*, 386 Ill. App. 3d at 334 (child sex victim need only generally describe the type of sexual act, the number of acts committed, and the time period in which the acts occurred).

¶ 59    Defendant does not contend he was prejudiced in making his defense as a result of the variance between the charging instrument and proof at trial. See *Davis*, 82 Ill. 2d at 539 (rejecting the defendant's claim a variance between the charging instrument and proof at trial vitiated his conviction where he failed to claim that he withheld evidence or was otherwise prejudiced in preparing his defense). Indeed, defendant cannot do so. His defenses at trial—that the girls conspired against him to fabricate charges of sexual misconduct as retaliation for his favoritism toward Whitney Ward and that he could not have met M.M. after school because he left Simeon each day at 3:15 or 3:30 p.m. to pick up Ms. Ramsey from the University of Chicago—applied equally whether the penis-to-mouth contact occurred between April 12, 2014, and June 9, 2014, or on June 10, 2014. Nor was the statute of limitations at issue in the case as M.M. was under 18 years of age at the time of the offense and defendant was brought to trial within two years of the offense. See 720 ILCS 5/3-6(j)(2) (West 2014) (general 20-year statute of limitations from date the victim attains 18 years of age for offense of criminal sexual assault when the victim is under 18 years of age at the time of the offense). Thus, we conclude the variance between the indictment and the proof at trial does not vitiate the finding of guilt with respect to count 16.

¶ 60     In a related argument, defendant asserts that, because the State declined to prosecute count 26, which defendant characterizes as alleging defendant made contact with his penis and M.M.'s mouth on June 10, 2014, his conviction on count 16 cannot be sustained based on M.M.'s testimony that she and defendant had "oral sex" on June 10, 2014. The record belies defendant's argument. Contrary to defendant's assertion, count 26 was not based on contact between defendant's penis and M.M.'s mouth. Rather, it was based on contact between defendant's mouth and M.M.'s "sex organ." Moreover, defendant not only failed to cite any authority in support of this argument, he raised it for the first time in his reply brief. It is therefore forfeited. See *Pickens*, 354 Ill. App. 3d at 916; *In re Marriage of Winter*, 2013 IL App (1st) 112836, ¶ 29 (appellant's arguments cannot be raised for the first time in reply brief). Accordingly, we conclude the State presented sufficient evidence to sustain defendant's conviction on count 16 of the indictment in case No. 14 CR 14348.

¶ 61     We next address defendant's contention that the State failed to prove him guilty of criminal sexual assault as alleged in counts 19 and 20 of the indictment in case No. 14 CR 14348. Count 19 alleged that defendant committed the offense of criminal sexual assault by inserting his finger into M.M.'s vagina between April 12, 2014, and June 9, 2014. Count 20 alleged defendant committed the offense of criminal sexual assault by inserting his finger into M.M.'s anus between April 12, 2014, and June 9, 2014. Defendant argues the State failed to prove these offenses beyond a reasonable doubt because M.M. never testified defendant inserted his finger into M.M.'s vagina or anus during this time period.

¶ 62     The record plainly rebuts defendant's contention that M.M. failed to testify defendant inserted his finger into M.M.'s vagina and anus during this time period. M.M. testified that she

and defendant had a continuing sexual relationship between April 10, 2014, and June 10, 2014. The State then, referring to the same time period, asked M.M. whether defendant "ever put his fingers anywhere inside your body," and M.M. responded defendant inserted his fingers in her vagina and anus.

¶ 63    Defendant nevertheless contends M.M.'s testimony did not establish defendant inserted his finger into M.M.'s vagina and anus between the alleged time period—April 12, 2014, to June 9, 2014. According to defendant, M.M.'s testimony was "too general and not specific enough to prove [defendant's] guilt beyond a reasonable doubt," where she was only asked whether defendant "ever" inserted his fingers into her vagina and anus. Defendant's argument suggests that M.M.'s testimony established that defendant could have inserted his fingers into M.M.'s vagina and anus at some other unspecified time. We disagree.

¶ 64    Here, M.M. specifically described defendant's acts of inserting his fingers into her vagina and anus during their ongoing sexual relationship that commenced on April 10, 2014, and continued until June 10, 2014. Her testimony (1) permitted a conclusion that unlawful conduct occurred and was different than the other unlawful conduct alleged; (2) supported each count of digital penetration of M.M. on which the State proceeded to trial; and (3) described the general time period in which the conduct occurred. See *Lechter*, 386 Ill. App. 3d at 334. Viewing M.M.'s testimony in the light most favorable to the prosecution, we conclude a rational trier of fact could have found defendant inserted his finger into M.M.'s vagina and anus between April 12, 2014, and June 9, 2014.

¶ 65    In doing so, we reject defendant's argument that M.M.'s testimony was too general where she responded affirmatively to the State's question whether defendant "ever" inserted his finger

into M.M.'s vagina and anus, and his suggestion this testimony establishes the digital penetration could have occurred at some other unspecified time. The record contains no evidence from which the trier of fact could conclude defendant and M.M. engaged in any sexual activity at any time other than the two-month period between April 10, 2014, and June 10, 2014. Accordingly, we conclude the State presented sufficient evidence to sustain defendant's convictions on counts 19 and 20 of the indictment in case No. 14 CR 14348.

¶ 66    Defendant next contends he received ineffective assistance of counsel where his attorney failed to tender an alibi defense and disclose two witnesses to support that defense in his answer to discovery. According to defendant, the trial court barred him from presenting evidence of his alibi where the defense had not been disclosed and where he failed to disclose the proper witnesses to support his defense. Additionally, defendant argues his counsel was ineffective for failing to properly prepare Ms. Ward for her testimony, specifically with respect to the text messages she had received from other witnesses in this case prior to her trial testimony.

¶ 67    When evaluating a claim of ineffective assistance of counsel, we apply a two-prong test under which the defendant must prove his counsel's performance fell below an objectively reasonable standard and the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Caballero*, 126 Ill. 2d 248, 259-60 (1989). The defendant must show that counsel's performance was both objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Veach*, 2017 IL 120649, ¶ 30. The burden is on defendant to satisfy both prongs of the *Strickland* test, and the failure to establish either defeats the claim. *Id.*

¶ 68    To put defendant's first ineffective-assistance claim in context, we recount the relevant factual circumstances. During trial, defense counsel sought to call a witness who would testify that, "every day" in the Spring of 2014, defendant picked up her children from grammar school each afternoon between 3:30 and 3:45 p.m. to rebut M.M.'s testimony that most of her and defendant's encounters occurred after school but before track practice began at 3:30 p.m. The State objected to the proposed testimony on two bases: (1) defendant had not pleaded an alibi defense in his answer to discovery; and (2) the proper witnesses to support the defense were the children defendant picked up and not their mother, as only the children could establish defendant was driving the children during the alleged time frame. The trial court barred the testimony of the witness on the basis that the proper witnesses to present the alibi evidence were the two children defendant picked up each day, not their mother, and told defense counsel he could call the two children, aged 13 and 15 at the time of trial, to testify. Counsel conceded he had not disclosed the children in defendant's answer to discovery.

¶ 69    On this factual backdrop, defendant contends he did not receive the effective assistance of counsel where his trial counsel failed to disclose the alibi defense and the two children who could support the defense as witnesses. According to defendant, counsel's failure to do so fell below an objective standard of reasonableness, and there is a reasonable probability the result of trial would have been different had these witnesses testified.

¶ 70    We note, initially, the record does not support defendant's contention that the trial court barred him from presenting his alibi defense because his counsel failed to disclose it in his answer to discovery. As noted above, the court barred testimony from the proposed witness on the basis that the proposed witness was not the proper witness to present the evidence. The court found,

rather, the proper witnesses were the two children who defendant purportedly picked up each day. In fact, the record indicates the court would have permitted the two children to testify except counsel had not disclosed them as witnesses.

¶ 71    We are not persuaded that defendant was prejudiced as a result of his counsel's failure to disclose and call the alibi witnesses. The record shows defense counsel presented other evidence to support his alibi defense. Ms. Ramsey testified that, "every weekday" in the spring of 2014, defendant left Simeon between 3:15 and 3:30 p.m. to pick her up from the University of Chicago. On his way to pick up Ms. Ramsey, defendant picked up two children from a grammar school. Then defendant, Ms. Ramsey, and the two children returned to Simeon. The trial court heard testimony from Ms. Ramsey that defendant was not at Simeon when M.M. stated most of the sexual misconduct occurred and rejected it. We, therefore, cannot conclude there is a reasonable probability the outcome of defendant's trial would have been different had defense counsel disclosed and called the two children to testify, as their testimony would have been cumulative of that offered by Ms. Ramsey. See *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 229 (finding the defendant was not prejudiced by failure to investigate alibi witnesses where counsel had presented a witness to corroborate alibi defense); *People v. Giles*, 209 Ill. App. 3d 265, 271 (1991) (rejecting the defendant's ineffective-assistance claim based on the failure to call an alibi witness where the witness's testimony would have been cumulative of other testimony on the issue). Accordingly, we reject defendant's ineffective-assistance claim based on counsel's failure to disclose and present his alibi defense.

¶ 72    Defendant also contends he received ineffective assistance of counsel where his attorney failed to adequately prepare Ms. Ward for her trial testimony. Defendant's contention focuses on

his trial counsel's failure to investigate, disclose, and present the text messages Ms. Ward received from the other girls on the track team. According to defendant, the text messages would have corroborated defendant's theory at trial that some of the girls on the track team conspired against defendant because he displayed favoritism toward Ms. Ward.

¶ 73    At first glance, it appears the record is inadequate to resolve defendant's claim of ineffective assistance of counsel because, as noted, copies of the text messages were not submitted at trial. However, Ms. Ward testified to the content of one of the text messages, and defense counsel proffered the content of another. Thus, we will address defendant's claim with respect to the content of the text messages which can be gleaned from the record.

¶ 74    The first text message was referenced during Ms. Ward's testimony. She stated she received a threat from Ms. Ross which stated, "we were doing this to get back at you. Hah, hah, hah. How's your stepdaddy doing?" The other text message, according to defense counsel's proffer, stated, "[W]e are glad that your stepfather is in a better place in jail."

¶ 75    We are not persuaded defendant was prejudiced as a result of his counsel's failure to investigate, disclose, and present the text messages Ms. Ward received from the other girls on the track team. With respect to prejudice, defendant argues the text messages would have corroborated his theory at trial the girls conspired against him. We disagree.

¶ 76    Ms. Duckworth testified that several members of the girls track team met in July 2014 to formulate a plan to get defendant terminated from his job. According to Ms. Duckworth, the girls formulated the plan to "get back at" Ms. Ward because they did not like her, but Ms. Duckworth's testimony did not establish why the other girls did not like Ms. Ward.

¶ 77    The messages Ms. Ward received do not corroborate Ms. Duckworth's testimony that the girls met at Simeon immediately before the sexual misconduct allegations against defendant came to light and conspired to fabricate those allegations. Rather, they corroborate only the fact that certain girls, only one of whom, A.K., was an alleged victim of defendant, had personal animus toward Ms. Ward. Because the text messages only loosely corroborated, if at all, defendant's theory at trial—that he was the target of a conspiracy in retaliation for his favoritism toward Ms. Ward—we fail to see how defendant was prejudiced by his counsel's failure to investigate, disclose, and present the text messages. Indeed, the record contains no evidence that either M.M. or N.H. were at the July 2014 meeting, were aware it took place, or were told by the attendees of the meeting to make up allegations against defendant so the attendees could get retribution against Ms. Ward for being favored by defendant. Moreover, the text messages, if presented, would have been cumulative of Ms. Duckworth's and Ms. Ward's testimony that the other girls disliked her and met to develop a conspiracy to get defendant terminated as retribution toward Ms. Ward. See *Giles*, 209 Ill. App. 3d at 271. Accordingly, we conclude defendant was not prejudiced by his counsel's failure to investigate, disclose, and present the two text messages received by Ms. Ward.

¶ 78    In sum, we conclude the State presented sufficient evidence to sustain defendant's convictions on counts 16, 19, and 20 of the indictment in case No. 14 CR 14348. We also conclude defendant has failed to establish the outcome of the trial would probably have been different had his counsel (1) presented testimony from the children who would have provided additional support for his alibi defense, or (2) investigated, disclosed, and presented the text messages received by Ms. Ward. Accordingly, we affirm the trial court's judgment.

¶ 79    For the reasons stated, we affirm the trial court's judgment.

¶ 80    Affirmed.